# EXHIBIT A

**OWNERSHIP INTEREST PLEDGE AGREEMENT**

THIS OWNERSHIP INTEREST PLEDGE AGREEMENT (this "**Agreement**") dated as of May 17, 2024, is given by **PRAMUKH MAHANT SENIOR LIVING FORT WORTH, LLC**, a Kentucky limited liability company ("**Pledgor**"), in favor of **CAZ CREEK LENDING HOLDINGS, LLC**, a Delaware limited liability company ("**Lender**").

**RECITALS**

A.    Calmont Villa FW, LLC, a Delaware limited liability company ("**Borrower**"), executed that certain Promissory Note for the benefit of Lender in the original principal amount of $6,510,187.56 of even date hereof ("**Note**"), which is secured by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date hereof ("**Security Instrument**"), made by Borrower, to Walter A. Suberg, Trustee, for the benefit of Lender (the Note, the Security Instrument and this Agreement and all documents executed in connection with the Note and the Security Instrument are collectively referred to as the "**Loan Documents**").

B.    As a material inducement for Lender to make the Loan to Borrower, Pledgor agrees to pledge Pledgor's now and after-acquired membership interests in Borrower to secure repayment of the Note.

**AGREEMENT**

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.    **Definitions**.    When used herein, (a) capitalized terms used but not defined in this Agreement have the meanings assigned to such terms in the Loan Documents, and (b) the following terms have the following meanings (such meanings to be applicable to both the singular and plural forms of such terms):

**Agreement** - see the introductory paragraph.

**Borrower** - see the recitals.

**Collateral** - see Section 2.

**Company Interests** – One Hundred Percent (100%) of all right, title and interest of Pledgor in and to the following: the Borrower, all profits, income, surplus, compensation, return of capital, distributions and other disbursements and payments to Borrower and/or Pledgor (including, without limitation, specific properties of the Borrower upon dissolution or otherwise), and all interests in Borrower now owned or hereafter acquired by Pledgor as a result of exchange offers, direct investments, contributions or otherwise; but excluding any obligation or liability of Pledgor with respect to the Borrower or any duty of Pledgor as an owner of the Borrower.

**Default** - the occurrence of any of the following events: (a) any Event of Default (as defined in the Loan Documents); or (b) any warranty of the Pledgor herein is untrue or misleading in any material respect and, as a result thereof, the Lender's security interest in any material portion of the Collateral is not perfected or the Lender's rights and remedies with respect to any material portion of the Collateral are materially impaired or otherwise materially adversely affected.

**Obligations** – all indebtedness and obligations owed by Borrower under the Loan Documents.

1

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467883_3.docx

**Other Liable Party** – all other parties liable for some or all of the Obligations.

**Pledged Property** - all Company Interests; all property received in exchange or substitution for Company Interests; all dividends, distributions and other returns from Company Interests; all other property delivered by Pledgor to the Lender for the purpose of pledge under this Agreement; and all proceeds of any of the foregoing.

**Pledgor** - see the introductory paragraph.

**UCC** - the Uniform Commercial Code as in effect from time to time in any applicable jurisdiction.

2.    **Pledge**.  As security for the payment of all Obligations, Pledgor hereby pledges to the Lender, and grants to the Lender a continuing security interest in, all of the following (hereinafter, collectively, as the "**Collateral**"):

A. the Company Interests;

B. all cash and other property, of any kind or nature, distributed or payable at any time or from time to time by the Borrower to Pledgor, as a distribution, in complete or partial liquidation or otherwise, including, without limitation, Pledgor's share of any revenues of the Borrower derived from any contract;

C. all patents and trademarks owned by or in the name of Borrower;

D. all other Pledged Property; and

E. all products and proceeds of all of the foregoing.

3.    **Delivery of Pledged Property**.

(a) All certificates or instruments representing or evidencing any Collateral, including those representing or evidencing the Company Interests, shall be delivered to and held by or on behalf of the Lender pursuant hereto, shall be in suitable form for transfer by delivery, and shall be accompanied by all necessary endorsements or instruments of transfer or assignment, duly executed in blank.

(b) Borrower shall cause the issuer of the Collateral to register the Collateral in Lender's name in the manner required by Section 8-106(b) of the UCC.

4.    **Warranties**.    Pledgor warrants to Lender for the benefit of Lender that:

4.1 Ownership, No Liens, etc. Pledgor is the legal and beneficial owner of, and has good title to (and has full right and authority to pledge and assign) the Collateral, free and clear of all liens, options or other charges or encumbrances.  No UCC financing statement covering any of the Collateral is presently on file in any public office other than those in favor of the Lender.  This Agreement creates a legal and valid security interest in the Collateral which has been perfected as a first and prior lien on the Collateral.  No "control" as defined in Article 8 of the UCC has been given to any Person other than the Lender.

4.2 Company Interests.  Pledgor owns 10% of the outstanding ownership interest of the Borrower.

2

4.3 <u>Authorization, Approval, etc</u>. Except for the filing of UCC financing statements, no authorization, approval or other action by, and no notice to or filing with, any governmental authority, regulatory body or any other Person is required for (i) the pledge by Pledgor of any Collateral pursuant to this Agreement, (ii) the execution, delivery and performance of this Agreement by Pledgor, (iii) the exercise by the Lender of the voting or other rights provided for in this Agreement or (iv) except as may be required in connection with a disposition of the Company Interests by laws affecting the offering and sale of securities generally, the exercise by the Lender of remedies in respect of the Collateral pursuant to this Agreement.

4.4 <u>Uncertificated Nature of Company Interests</u>. No right, title or interest of Pledgor in the Borrower is represented by a certificate of interest or instrument, except such certificates or instruments, if any, as have been delivered to the Lender and are held in its possession, together with transfer documents as required in this Agreement (and Pledgor covenants and agrees that any such certificates or instruments hereafter received by Pledgor with respect to any of the Collateral will be held in trust for the Lender for the benefit of the Lender and promptly delivered to the Lender). No Collateral is held in a securities account.

4.5 <u>Other</u>. (i) The pledge and delivery of the Collateral pursuant to this Agreement, together with the filing of appropriate UCC financing statements, will create a valid perfected security interest in the Collateral in favor of the Lender; and (ii) all Company Interests are duly authorized, validly issued, fully paid and non-assessable.

4.6. <u>Payment and Performance of Obligations</u>. Pledgor guarantees that Borrower will promptly pay, perform, observe, and satisfy all Obligations when due.

4.7. <u>Ownership, Maintenance, and Preservation of Collateral; Compliance With Law</u>.

4.7.1. Pledgor represents and warrants that it is (and as to any Collateral acquired hereafter agrees and warrants that it will at all times be and remain) the sole owner of the Collateral, free from any lien, security interest, or other claim, excepting only the security interest granted by this Agreement. Pledgor represents and warrants that it has not executed or authorized the filing of any financing statement covering any of the Collateral except in favor of Lender, and that no financing statement covering any of the Collateral is on file in any public office in any jurisdiction. Without Lender's prior written consent, Pledgor will not execute, file, or authorize to be filed, in any jurisdiction, any financing statement covering any of the Collateral in which Lender is not named as the sole secured party. Pledgor represents and warrants that there is no personal property of any type or description that is leased to Pledgor, and agrees and warrants that Pledgor will not become the lessee of any personal property without Lender's prior written consent.

4.7.2. Pledgor will comply with all applicable laws, ordinances, regulations, covenants, conditions, restrictions, and requirements of governmental authorities now or hereafter affecting the Collateral (collectively, "**Applicable Law**"). Pledgor agrees not to commit, suffer, or allow any act to be done in violation of Applicable Law and will make all payments required under Applicable Law.

4.7.3. In the performance of all such acts and all other acts required by this Agreement, Pledgor will promptly pay when due, at its own expense, all expenses incurred and will promptly pay, discharge, or otherwise satisfy all claims for labor performed and materials furnished in connection with the Collateral.

3

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467883_3.docx

4.8. Litigation; Attorney Fees.

4.8.1. Pledgor will promptly notify Lender of the commencement or threat of commencement of any litigation that seeks to or could materially affect any of the Collateral, the security interest of this Agreement, or the rights or powers of Lender under this Agreement. Pledgor will, at its own expense, appear in and defend any such litigation. Lender will also have the right, but not the obligation, to appear in any such litigation, and Pledgor will pay all costs and expenses (including attorneys' fees) of Lender in so appearing.

4.8.2. Pledgor agrees to pay the following costs, expenses, and attorneys' fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorneys' fees paid or incurred in connection with the collection or enforcement of the Loan Documents, whether or not suit is filed; (b) reasonable costs, expenses, and attorneys' fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under the Loan Documents; (c) reasonable costs, expenses, and attorneys' fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as attorneys' fees in any action to enforce payment of the Loan Documents or any part of it. In addition to the aforementioned fees, costs, and expenses, Lender shall be entitled to its attorneys' fees, and all other fees, costs, and expenses incurred in any post-judgment proceedings to collect or enforce any judgment. This provision for the recovery of post-judgment fees, costs, and expenses is separate and several and shall survive the merger of this Agreement into any judgment on this Agreement.

4.9. Lender's Right to Perform for Pledgor. If Pledgor fails to make any payment, perform any obligation hereunder, or do any act set forth in or secured by this Agreement, Lender, at Lender's option, without notice to or demand on Pledgor and without releasing Pledgor from the duty to make such payments, perform such obligations, or do such acts, then or in the future, may make such payment, perform such obligation or do such act in such manner and to such extent as Lender may deem necessary, in its sole discretion, to protect the security of this Agreement. Without limiting any foregoing clause, Lender may pay, purchase, contest, or compromise any encumbrance, charge, or lien that, in Lender's sole judgment, appears to be prior or superior to this Agreement. In exercising any such power, Lender may pay all necessary expenses incurred, including attorneys' fees. Pledgor will pay, immediately and without demand, all sums so expended by Lender with interest, from the date of expenditure, at the rate from time to time applicable under the Note.

4.10. Pledgor's Additional Performance. Pledgor will execute any and all further agreements, assignments, documents, financing statements, and authorizations of financing statements, and take such other further acts, as Lender may reasonably request from time to time, in order to evidence, protect, perfect, or continue the security interest of Lender in the Collateral or otherwise carry out the purposes and intent of this Agreement.

4.11. Financing Statements. Pledgor authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Pledgor's signature if permitted by law. At Lender's election, in addition to or instead of any other description of the Collateral, any financing statement description may use the terms "all assets," "all personal property," or words to similar effect.

4.12. Indemnity. Pledgor will indemnify, defend, and hold Lender harmless from and against all liabilities, claims, actions, costs, and expenses, including attorneys' fees, arising from or related to Pledgor's ownership or use of any of the Collateral, or Lender's exercise of any of its rights or remedies under this Agreement.

4

## 5.    Default; Remedies.

5.1. Events of Default. Each of the following will constitute an event of default under this Agreement:

5.1.1. Pledgor fails to pay any monetary amount due, as and when required, under this Agreement;

5.1.2. Pledgor defaults under or fails to perform, observe, or satisfy when due any nonmonetary condition, covenant, or other provision of this Agreement;

5.1.3. Any Event of Default occurs under any other Loan Document or other agreement, subject to any provision for notice and cure set forth in such Loan Document or other agreement;

5.1.4. Any representation or warranty in this Agreement or in any other instrument or agreement evidencing, securing, guaranteeing, or otherwise relating to any of the Obligations is or becomes untrue or misleading in any material respect;

5.1.5. Any claim of lien is filed against any of the Collateral, or occurrence of a default by Pledgor under any lien, mortgage, or security agreement that Lender has permitted;

5.1.6. Pledgor or any Other Liable Party ceases operations, is dissolved, or terminates its existence; or

5.1.7. Pledgor or any Other Liable Party makes a general assignment for the benefit of creditors or generally is not paying, or is unable to pay, or admits in writing the inability to pay, its debts as they become due, or any bankruptcy, insolvency, reorganization, receivership, conservatorship, or debtor-relief proceeding is commenced with respect to Pledgor or any Other Liable Party; provided, however, that if such a proceeding is commenced with respect to Pledgor by a party other than Pledgor or any of Pledgor's general partners or members (as applicable), or if such a proceeding is commenced with respect to any Other Liable Party by a party other than such Other Liable Party or any of such Other Liable Party's general partners or members, Pledgor or such Other Liable Party will have 15 calendar days to have the proceeding dismissed or discharged.

5.2. Lender's Remedies.

5.2.1. If an event of default under this Agreement occurs, Lender may, at its sole option, without notice to or demand on Pledgor, do any one or more of the following:

(a) Declare any or all of the Obligations immediately due and payable, regardless of any otherwise applicable maturity date;

(b) After giving such notice as may be required by law, if any, foreclose on, sell, lease, license, or otherwise dispose of, nonjudicially and/or by judicial action, in any order, separately or together, at the same or different times and places, any or all of the Collateral and/or any other real or personal property security for the Obligations, without waiving any other part of any of the Collateral or any other such real or personal property security;

(c) Require Pledgor to assemble any or all of the Collateral and make it available to Lender at a place designated by Lender that is reasonably convenient to Pledgor and Lender;

5

Ownership Interest Pledge Agreement
\\CAPP-329\ProLaw$\Documents\4958.024\467883_3.docx

(d) Without removal, render the Collateral unusable and dispose of it on the premises of Pledgor without judicial process, if Lender can do so without a breach of the peace, or by judicial process;

(e) Enter on any property where any of the Collateral may be located and possess and remove any or all of the Collateral without judicial process, if Lender can do so without a breach of the peace, or by judicial process;

(f) In any sale, lease, license, or other disposition of any Collateral, disclaim any or all warranties of any kind which by law may be disclaimed, and no such disclaimer shall be considered to affect the commercial reasonableness of such sale, lease, license or other disposition;

(g) Exclude Pledgor and its successors or assigns, agents, and employees from the Collateral, and hold, store, use, operate, manage, and control the Collateral, and collect and receive all rents, revenues, issues, income, and profits of the Collateral;

(h) Exercise any or all other remedies now or in the future available to a secured party under the UCC;

(i) Obtain the appointment of a receiver ex parte and without prior notice to Pledgor, which notice Pledgor hereby waives;

(j) Obtain specific performance of any covenant or agreement contained in this Agreement, or in aid of the execution of any power or remedy granted in this Agreement;

(k) Exercise rights of Pledgor as owner of the Company Interests, including payments; and

(l) Exercise any other legal, equitable, or contractual right or remedy against Pledgor and/or any security and/or any Other Liable Party.

5.2.2. No remedy provided or permitted under this Agreement is exclusive of any other, or of any remedy provided or permitted by law, equity, or any other instrument or agreement evidencing, securing, guaranteeing, or relating to any of the Obligations. Each remedy is cumulative and in addition to every other remedy. No exercise of remedies, including foreclosure, against any part of the Collateral will exhaust or extinguish Lender's rights to exercise remedies, including foreclosure, against any other part of the Collateral until the Obligations are paid in full. No exercise of remedies will extinguish Lender's rights to exercise remedies, including foreclosure, against the Collateral until the Obligations are paid in full. Lender may exercise any one or more of its remedies at its option without regard to the adequacy of its security.

5.2.3. Lender's delay or omission in the exercise of any right, remedy, or power accruing on any event of default under this Agreement will not impair such right, remedy, or power or any other, nor will such delay or omission be deemed a waiver of or acquiescence in that or any other event of default.

5.3. Use of Proceeds. The proceeds of any disposition or use of Collateral will be applied in the following priority: (a) to pay expenses of taking, holding, preparing for disposition, selling, using, leasing, licensing, otherwise disposing of the Collateral, and the like, including attorneys' fees and costs incurred by Lender; (b) to satisfy all remaining Obligations in such order as Lender may elect; and (c) to satisfy any indebtedness secured by any subordinate security interest in the Collateral, if an authenticated

6

Ownership Interest Pledge Agreement
\\CAPP-329\ProLaw$\Documents\4958.024\467883_3.docx

demand for such payment is received before distribution of the proceeds is completed. The disposition of any Collateral, the realization of any proceeds, the application of any proceeds, or any one or more of the foregoing shall not operate to cure any nonmonetary or monetary default in or reinstate the Obligations for any purpose, or otherwise affect in any way Lender's rights and remedies with respect to any remaining Collateral, or any other real or personal property security, except to the extent otherwise required by law.

6.      **Miscellaneous Provisions**.

6.1. Governing Law and Venue. THIS AGREEMENT IS EXECUTED AND DELIVERED IN CONNECTION WITH A LENDING TRANSACTION NEGOTIATED AND CONSUMMATED IN DALLAS COUNTY, TEXAS, AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. PLEDGOR, FOR ITSELF AND ITS SUCCESSORS AND ASSIGNS, HEREBY IRREVOCABLY (A) SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS IN TEXAS, (B) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THAT IT MAY NOW OR IN THE FUTURE HAVE TO THE LAYING OF VENUE OF ANY LITIGATION ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS BROUGHT IN THE DISTRICT COURT OF DALLAS COUNTY, TEXAS, OR IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, (C) WAIVES ANY OBJECTION PLEDGOR MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING BROUGHT IN SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM, AND (D) AGREES THAT ANY LEGAL PROCEEDING AGAINST ANY PARTY TO ANY OF THE LOAN DOCUMENTS ARISING OUT OF OR IN CONNECTION WITH ANY OF THE LOAN DOCUMENTS MAY BE BROUGHT IN ONE OF THE FOREGOING COURTS.

6.2. Entire Agreement; Modification. This Agreement and the other Loan Documents collectively constitute the entire understanding between Lender and Pledgor as to the matters contemplated in those documents and may not be modified, amended, or terminated except by written agreement signed by both parties.

6.3. Partial Invalidity. If any provision of this Agreement or the instruments or agreements reflecting the Obligations are held to be invalid, illegal, unenforceable, or voidable in any respect, no other provision of this Agreement, or of any such other instrument or agreement, will be affected thereby, and such other provisions will remain binding and enforceable.

6.4. Parties Benefited. This Agreement applies to, inures to the benefit of, and binds all parties to this Agreement and their respective heirs, legatees, devisees, administrators, executors, successors, and assigns (but this provision will not be interpreted to permit or validate any lien, encumbrance, assignment, or other transfer by Pledgor that is prohibited by other provisions of this Agreement or other Loan Documents). "Lender" means the owner and holder, including pledgees, of any of the Obligations.

6.5. Headings. Headings are used for convenience of reference only and do not define or limit the scope of this Agreement.

6.6. Written Notice; Delivery.

6.6.1. Any notice or demand required hereunder shall be deemed to be delivered when deposited in the United States mail, postage prepaid, certified mail, return receipt requested, addressed to Borrower or Lender, as the case may be, at the address set out hereinbelow, or at such other

7

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467883_3.docx

address as such party may hereafter deliver in accordance herewith. Any other method of delivery or demand shall be effective only when actually received by the recipient thereof. If and when included within the term "Pledgor" or "Lender" there are more than one person, all shall jointly arrange among themselves for their joint execution and delivery of a notice to the other specifying some person at some specific address for the receipt of all notices, demands, payments or other documents. All persons included within the terms "Pledgor" or "Lender," respectively, shall be bound by notices, demands, payments and documents given in accordance with the provisions of this paragraph to the same extent as if each had received such notice, demand, payment or document.

6.6.2. All notices will be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

|  |  |
|---|---|
| Lender: | Caz Creek Lending Holdings, LLC<br>14800 Landmark Blvd., Suite 400<br>Dallas, Texas 75254<br>Attn: Ken Frisbie |
| Pledgor: | Pramukh Mahant Senior Living<br>Fort Worth, LLC<br>11165 Frontgate Road<br>Walton, Kentucky 41094<br>Attn: Harikrishna Patel |

6.7. Joint and Several Obligations. If more than one person has executed this Agreement as Pledgor, the obligations of all such persons will be joint and several. Any married person who executes this Agreement agrees that recourse may be had against his or her separate property and against community property. If Pledgor is a partnership, Pledgor's obligations will be the joint and several obligations of all general partners in that partnership.

**[SIGNATURES FOLLOW]**

8

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467883_3.docx

IN WITNESS WHEREOF, and intending to be legally bound, Pledgor has executed and delivered this Ownership Interest Pledge Agreement as of the date first written above.

**PLEDGOR:**

**PRAMUKH MAHANT SENIOR LIVING FORT WORTH, LLC,**
a Kentucky limited liability company

By: _____
        Harikrishna Patel,
        Member and Manager

**CALMONT VILLA FW, LLC, A DELAWARE LIMITED LIABILITY COMPANY, ACKNOWLEDGES AND CONSENTS TO THIS OWNERSHIP INTEREST PLEDGE AGREEMENT.**

**CALMONT VILLA FW, LLC,**
a Delaware limited liability company

By: _____
        Richard Mark Rubin, Manager

By: _____
        Avi Patel, Manager

5/14/24

VARUN KAPUR
Notary ID #133912186
My Commission Expires
August 16, 2026

Ownership Interest Pledge Agreement
{Signature Page}

IN WITNESS WHEREOF, and intending to be legally bound, Pledgor has executed and delivered this Ownership Interest Pledge Agreement as of the date first written above.

**PLEDGOR:**

**PRAMUKH MAHANT SENIOR LIVING FORT WORTH, LLC,**
a Kentucky limited liability company

By: _____
    Harikrishna Patel,
    Member and Manager

**CALMONT VILLA FW, LLC, A DELAWARE LIMITED LIABILITY COMPANY, ACKNOWLEDGES AND CONSENTS TO THIS OWNERSHIP INTEREST PLEDGE AGREEMENT.**

**CALMONT VILLA FW, LLC,**
a Delaware limited liability company

By: _____
    Richard Mark Rubin, Manager

By: _____
    Avi Patel, Manager

5/14/24

VARUN KAPUR
Notary ID #133912186
My Commission Expires
August 16, 2026

NOTARY PUBLIC STATE OF TEXAS

Ownership Interest Pledge Agreement
{Signature Page}

## ASSIGNMENT SEPARATE FROM CERTIFICATE

For value received, and for the purpose of providing security for repayment of that certain Promissory Note of even date hereof, in the original principal amount of $6,510,187.56, executed by Calmont Villa FW, LLC, a Delaware limited liability company ("**Borrower**"), in favor of Caz Creek Lending Holdings, LLC, a Delaware limited liability company ("**Secured Party**"), the undersigned transfers and assigns to Secured Party all of his rights, title, stock and interest in and to Borrower. It is the intention of this assignment to confer possession of the membership interest and all certificates, if applicable, thereto to Secured Party for security purposes only.

Dated: May 17, 2024

**Ownership Interest Pledge Agreement**
**Assignment Separate from Certificate**

**PRAMUKH MAHANT SENIOR LIVING
FORT WORTH, LLC,**
a Kentucky limited liability company

By: _____
Harikrishna Patel,
Member and Manager


STATE OF __Kentucky__ §
§
COUNTY OF __Boone__ §

     The foregoing instrument was ACKNOWLEDGED before me this __15__ day of May, 2024, by Harikrishna Patel, Member and Manager of **PRAMUKH MAHANT SENIOR LIVING FORT WORTH, LLC**, a Kentucky limited liability company, on behalf of said limited liability company.

WITNESS my hand and official seal.

_____ (SEAL)
Notary Public Signature

OFFICIAL SEAL
KAYLA RENEE MCGRIFF
NOTARY PUBLIC - KENTUCKY
STATE-AT-LARGE
My Comm. Expires April 3, 2028
Commission # KYNP87206

Ownership Interest Pledge Agreement
Assignment Separate from Certificate
{signature page}

**CALMONT VILLA FW, LLC, A DELAWARE LIMITED LIABILITY COMPANY, ACKNOWLEDGES AND CONSENTS TO THIS OWNERSHIP INTEREST PLEDGE AGREEMENT.**

CALMONT VILLA FW, LLC,
a Delaware limited liability company

By: _____
Richard Mark Rubin, Manager

By: _____
Avi Patel, Manager

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA §
§
COUNTY OF Los Angeles §

On May 14, 2024, before me, Michael Ohannesian , Notary Public, personally appeared Richard Mark Rubin, who proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (SEAL)
Notary Public Signature

> MICHAEL OHANNESIAN
> Notary Public · California
> Los Angeles County
> Commission # 2483466
> My Comm. Expires Mar 28, 2028

STATE OF TEXAS §
§
COUNTY OF TRAVIS §

The foregoing instrument was ACKNOWLEDGED before me this 14th day of May, 2024, by Avi Patel, Manager of **CALMONT VILLA FW, LLC**, a Delaware limited liability company, on behalf of said limited liability company.

WITNESS my hand and official seal.



_____ (SEAL)
Notary Public Signature

> VARUN KAPUR
> Notary ID:#133912186
> My Commission Expires
> August 16, 2026

Ownership Interest Pledge Agreement
Assignment Separate from Certificate
{signature page}

## OWNERSHIP INTEREST PLEDGE AGREEMENT

THIS OWNERSHIP INTEREST PLEDGE AGREEMENT (this "**Agreement**") dated as of May 17, 2024, is given by **ENDEAVOR GROUP REAL ESTATE, LLC**, a Wyoming limited liability company ("**Pledgor**"), in favor of **CAZ CREEK LENDING HOLDINGS, LLC**, a Delaware limited liability company ("**Lender**").

### RECITALS

A.      Calmont Villa FW, LLC, a Delaware limited liability company ("**Borrower**"), executed that certain Promissory Note for the benefit of Lender in the original principal amount of $6,510,187.56 of even date hereof ("**Note**"), which is secured by that certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing of even date hereof ("**Security Instrument**"), made by Borrower, to Walter A. Suberg, Trustee, for the benefit of Lender (the Note, the Security Instrument and this Agreement and all documents executed in connection with the Note and the Security Instrument are collectively referred to as the "**Loan Documents**").

B.      As a material inducement for Lender to make the Loan to Borrower, Pledgor agrees to pledge Pledgor's now and after-acquired membership interests in Borrower to secure repayment of the Note.

### AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1.      **Definitions**.  When used herein, (a) capitalized terms used but not defined in this Agreement have the meanings assigned to such terms in the Loan Documents, and (b) the following terms have the following meanings (such meanings to be applicable to both the singular and plural forms of such terms):

**Agreement** - see the introductory paragraph.

**Borrower** - see the recitals.

**Collateral** - see Section 2.

**Company Interests** – One Hundred Percent (100%) of all right, title and interest of Pledgor in and to the following: the Borrower, all profits, income, surplus, compensation, return of capital, distributions and other disbursements and payments to Borrower and/or Pledgor (including, without limitation, specific properties of the Borrower upon dissolution or otherwise), and all interests in Borrower now owned or hereafter acquired by Pledgor as a result of exchange offers, direct investments, contributions or otherwise; but excluding any obligation or liability of Pledgor with respect to the Borrower or any duty of Pledgor as an owner of the Borrower.

**Default** - the occurrence of any of the following events: (a) any Event of Default (as defined in the Loan Documents); or (b) any warranty of the Pledgor herein is untrue or misleading in any material respect and, as a result thereof, the Lender's security interest in any material portion of the Collateral is not perfected or the Lender's rights and remedies with respect to any material portion of the Collateral are materially impaired or otherwise materially adversely affected.

**Obligations** – all indebtedness and obligations owed by Borrower under the Loan Documents.

1

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467873_3.docx

**Other Liable Party** – all other parties liable for some or all of the Obligations.

**Pledged Property** - all Company Interests; all property received in exchange or substitution for Company Interests; all dividends, distributions and other returns from Company Interests; all other property delivered by Pledgor to the Lender for the purpose of pledge under this Agreement; and all proceeds of any of the foregoing.

**Pledgor** - see the introductory paragraph.

**UCC** - the Uniform Commercial Code as in effect from time to time in any applicable jurisdiction.

2.    **Pledge**.  As security for the payment of all Obligations, Pledgor hereby pledges to the Lender, and grants to the Lender a continuing security interest in, all of the following (hereinafter, collectively, as the "**Collateral**"):

A. the Company Interests;

B. all cash and other property, of any kind or nature, distributed or payable at any time or from time to time by the Borrower to Pledgor, as a distribution, in complete or partial liquidation or otherwise, including, without limitation, Pledgor's share of any revenues of the Borrower derived from any contract;

C. all patents and trademarks owned by or in the name of Borrower;

D. all other Pledged Property; and

E. all products and proceeds of all of the foregoing.

3.    **Delivery of Pledged Property**.

(a) All certificates or instruments representing or evidencing any Collateral, including those representing or evidencing the Company Interests, shall be delivered to and held by or on behalf of the Lender pursuant hereto, shall be in suitable form for transfer by delivery, and shall be accompanied by all necessary endorsements or instruments of transfer or assignment, duly executed in blank.

(b) Borrower shall cause the issuer of the Collateral to register the Collateral in Lender's name in the manner required by Section 8-106(b) of the UCC.

4.    **Warranties**.    Pledgor warrants to Lender for the benefit of Lender that:

4.1 Ownership, No Liens, etc.  Pledgor is the legal and beneficial owner of, and has good title to (and has full right and authority to pledge and assign) the Collateral, free and clear of all liens, options or other charges or encumbrances.  No UCC financing statement covering any of the Collateral is presently on file in any public office other than those in favor of the Lender.  This Agreement creates a legal and valid security interest in the Collateral which has been perfected as a first and prior lien on the Collateral.  No "control" as defined in Article 8 of the UCC has been given to any Person other than the Lender.

4.2 Company Interests.  Pledgor owns 90% of the outstanding ownership interest of the Borrower.

2

4.3 <u>Authorization, Approval, etc</u>. Except for the filing of UCC financing statements, no authorization, approval or other action by, and no notice to or filing with, any governmental authority, regulatory body or any other Person is required for (i) the pledge by Pledgor of any Collateral pursuant to this Agreement, (ii) the execution, delivery and performance of this Agreement by Pledgor, (iii) the exercise by the Lender of the voting or other rights provided for in this Agreement or (iv) except as may be required in connection with a disposition of the Company Interests by laws affecting the offering and sale of securities generally, the exercise by the Lender of remedies in respect of the Collateral pursuant to this Agreement.

4.4 <u>Uncertificated Nature of Company Interests</u>. No right, title or interest of Pledgor in the Borrower is represented by a certificate of interest or instrument, except such certificates or instruments, if any, as have been delivered to the Lender and are held in its possession, together with transfer documents as required in this Agreement (and Pledgor covenants and agrees that any such certificates or instruments hereafter received by Pledgor with respect to any of the Collateral will be held in trust for the Lender for the benefit of the Lender and promptly delivered to the Lender). No Collateral is held in a securities account.

4.5 <u>Other</u>. (i) The pledge and delivery of the Collateral pursuant to this Agreement, together with the filing of appropriate UCC financing statements, will create a valid perfected security interest in the Collateral in favor of the Lender; and (ii) all Company Interests are duly authorized, validly issued, fully paid and non-assessable.

4.6. <u>Payment and Performance of Obligations</u>. Pledgor guarantees that Borrower will promptly pay, perform, observe, and satisfy all Obligations when due.

4.7. <u>Ownership, Maintenance, and Preservation of Collateral; Compliance With Law</u>.

4.7.1. Pledgor represents and warrants that it is (and as to any Collateral acquired hereafter agrees and warrants that it will at all times be and remain) the sole owner of the Collateral, free from any lien, security interest, or other claim, excepting only the security interest granted by this Agreement. Pledgor represents and warrants that it has not executed or authorized the filing of any financing statement covering any of the Collateral except in favor of Lender, and that no financing statement covering any of the Collateral is on file in any public office in any jurisdiction. Without Lender's prior written consent, Pledgor will not execute, file, or authorize to be filed, in any jurisdiction, any financing statement covering any of the Collateral in which Lender is not named as the sole secured party. Pledgor represents and warrants that there is no personal property of any type or description that is leased to Pledgor, and agrees and warrants that Pledgor will not become the lessee of any personal property without Lender's prior written consent.

4.7.2. Pledgor will comply with all applicable laws, ordinances, regulations, covenants, conditions, restrictions, and requirements of governmental authorities now or hereafter affecting the Collateral (collectively, "**Applicable Law**"). Pledgor agrees not to commit, suffer, or allow any act to be done in violation of Applicable Law and will make all payments required under Applicable Law.

4.7.3. In the performance of all such acts and all other acts required by this Agreement, Pledgor will promptly pay when due, at its own expense, all expenses incurred and will promptly pay, discharge, or otherwise satisfy all claims for labor performed and materials furnished in connection with the Collateral.

3

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467873_3.docx

4.8. Litigation; Attorney Fees.

4.8.1. Pledgor will promptly notify Lender of the commencement or threat of commencement of any litigation that seeks to or could materially affect any of the Collateral, the security interest of this Agreement, or the rights or powers of Lender under this Agreement. Pledgor will, at its own expense, appear in and defend any such litigation. Lender will also have the right, but not the obligation, to appear in any such litigation, and Pledgor will pay all costs and expenses (including attorneys' fees) of Lender in so appearing.

4.8.2. Pledgor agrees to pay the following costs, expenses, and attorneys' fees paid or incurred by Lender, or adjudged by a court: (a) reasonable costs of collection and costs, expenses, and attorneys' fees paid or incurred in connection with the collection or enforcement of the Loan Documents, whether or not suit is filed; (b) reasonable costs, expenses, and attorneys' fees paid or incurred in connection with representing Lender in any bankruptcy, reorganization, receivership, or other proceedings affecting creditors' rights and involving a claim under the Loan Documents; (c) reasonable costs, expenses, and attorneys' fees incurred to protect the lien of the Security Instrument; and (d) costs of suit and such sum as the court may adjudge as attorneys' fees in any action to enforce payment of the Loan Documents or any part of it. In addition to the aforementioned fees, costs, and expenses, Lender shall be entitled to its attorneys' fees, and all other fees, costs, and expenses incurred in any post-judgment proceedings to collect or enforce any judgment. This provision for the recovery of post-judgment fees, costs, and expenses is separate and several and shall survive the merger of this Agreement into any judgment on this Agreement.

4.9. Lender's Right to Perform for Pledgor. If Pledgor fails to make any payment, perform any obligation hereunder, or do any act set forth in or secured by this Agreement, Lender, at Lender's option, without notice to or demand on Pledgor and without releasing Pledgor from the duty to make such payments, perform such obligations, or do such acts, then or in the future, may make such payment, perform such obligation or do such act in such manner and to such extent as Lender may deem necessary, in its sole discretion, to protect the security of this Agreement. Without limiting any foregoing clause, Lender may pay, purchase, contest, or compromise any encumbrance, charge, or lien that, in Lender's sole judgment, appears to be prior or superior to this Agreement. In exercising any such power, Lender may pay all necessary expenses incurred, including attorneys' fees. Pledgor will pay, immediately and without demand, all sums so expended by Lender with interest, from the date of expenditure, at the rate from time to time applicable under the Note.

4.10. Pledgor's Additional Performance. Pledgor will execute any and all further agreements, assignments, documents, financing statements, and authorizations of financing statements, and take such other further acts, as Lender may reasonably request from time to time, in order to evidence, protect, perfect, or continue the security interest of Lender in the Collateral or otherwise carry out the purposes and intent of this Agreement.

4.11. Financing Statements. Pledgor authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Pledgor's signature if permitted by law. At Lender's election, in addition to or instead of any other description of the Collateral, any financing statement description may use the terms "all assets," "all personal property," or words to similar effect.

4.12. Indemnity. Pledgor will indemnify, defend, and hold Lender harmless from and against all liabilities, claims, actions, costs, and expenses, including attorneys' fees, arising from or related to Pledgor's ownership or use of any of the Collateral, or Lender's exercise of any of its rights or remedies under this Agreement.

4

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467873_3.docx

## 5.    Default; Remedies.

5.1. Events of Default. Each of the following will constitute an event of default under this Agreement:

5.1.1. Pledgor fails to pay any monetary amount due, as and when required, under this Agreement;

5.1.2. Pledgor defaults under or fails to perform, observe, or satisfy when due any nonmonetary condition, covenant, or other provision of this Agreement;

5.1.3. Any Event of Default occurs under any other Loan Document or other agreement, subject to any provision for notice and cure set forth in such Loan Document or other agreement;

5.1.4. Any representation or warranty in this Agreement or in any other instrument or agreement evidencing, securing, guaranteeing, or otherwise relating to any of the Obligations is or becomes untrue or misleading in any material respect;

5.1.5. Any claim of lien is filed against any of the Collateral, or occurrence of a default by Pledgor under any lien, mortgage, or security agreement that Lender has permitted;

5.1.6. Pledgor or any Other Liable Party ceases operations, is dissolved, or terminates its existence; or

5.1.7. Pledgor or any Other Liable Party makes a general assignment for the benefit of creditors or generally is not paying, or is unable to pay, or admits in writing the inability to pay, its debts as they become due, or any bankruptcy, insolvency, reorganization, receivership, conservatorship, or debtor-relief proceeding is commenced with respect to Pledgor or any Other Liable Party; provided, however, that if such a proceeding is commenced with respect to Pledgor by a party other than Pledgor or any of Pledgor's general partners or members (as applicable), or if such a proceeding is commenced with respect to any Other Liable Party by a party other than such Other Liable Party or any of such Other Liable Party's general partners or members, Pledgor or such Other Liable Party will have 15 calendar days to have the proceeding dismissed or discharged.

5.2. Lender's Remedies.

5.2.1. If an event of default under this Agreement occurs, Lender may, at its sole option, without notice to or demand on Pledgor, do any one or more of the following:

(a) Declare any or all of the Obligations immediately due and payable, regardless of any otherwise applicable maturity date;

(b) After giving such notice as may be required by law, if any, foreclose on, sell, lease, license, or otherwise dispose of, nonjudicially and/or by judicial action, in any order, separately or together, at the same or different times and places, any or all of the Collateral and/or any other real or personal property security for the Obligations, without waiving any other part of any of the Collateral or any other such real or personal property security;

(c) Require Pledgor to assemble any or all of the Collateral and make it available to Lender at a place designated by Lender that is reasonably convenient to Pledgor and Lender;

5

(d) Without removal, render the Collateral unusable and dispose of it on the premises of Pledgor without judicial process, if Lender can do so without a breach of the peace, or by judicial process;

(e) Enter on any property where any of the Collateral may be located and possess and remove any or all of the Collateral without judicial process, if Lender can do so without a breach of the peace, or by judicial process;

(f) In any sale, lease, license, or other disposition of any Collateral, disclaim any or all warranties of any kind which by law may be disclaimed, and no such disclaimer shall be considered to affect the commercial reasonableness of such sale, lease, license or other disposition;

(g) Exclude Pledgor and its successors or assigns, agents, and employees from the Collateral, and hold, store, use, operate, manage, and control the Collateral, and collect and receive all rents, revenues, issues, income, and profits of the Collateral;

(h) Exercise any or all other remedies now or in the future available to a secured party under the UCC;

(i) Obtain the appointment of a receiver ex parte and without prior notice to Pledgor, which notice Pledgor hereby waives;

(j) Obtain specific performance of any covenant or agreement contained in this Agreement, or in aid of the execution of any power or remedy granted in this Agreement;

(k) Exercise rights of Pledgor as owner of the Company Interests, including payments; and

(l) Exercise any other legal, equitable, or contractual right or remedy against Pledgor and/or any security and/or any Other Liable Party.

5.2.2. No remedy provided or permitted under this Agreement is exclusive of any other, or of any remedy provided or permitted by law, equity, or any other instrument or agreement evidencing, securing, guaranteeing, or relating to any of the Obligations. Each remedy is cumulative and in addition to every other remedy. No exercise of remedies, including foreclosure, against any part of the Collateral will exhaust or extinguish Lender's rights to exercise remedies, including foreclosure, against any other part of the Collateral until the Obligations are paid in full. No exercise of remedies will extinguish Lender's rights to exercise remedies, including foreclosure, against the Collateral until the Obligations are paid in full. Lender may exercise any one or more of its remedies at its option without regard to the adequacy of its security.

5.2.3. Lender's delay or omission in the exercise of any right, remedy, or power accruing on any event of default under this Agreement will not impair such right, remedy, or power or any other, nor will such delay or omission be deemed a waiver of or acquiescence in that or any other event of default.

5.3. Use of Proceeds. The proceeds of any disposition or use of Collateral will be applied in the following priority: (a) to pay expenses of taking, holding, preparing for disposition, selling, using, leasing, licensing, otherwise disposing of the Collateral, and the like, including attorneys' fees and costs incurred by Lender; (b) to satisfy all remaining Obligations in such order as Lender may elect; and (c) to satisfy any indebtedness secured by any subordinate security interest in the Collateral, if an authenticated

6

Ownership Interest Pledge Agreement
\\CAPP-329\ProLaw$\Documents\4958.024\467873_3.docx

demand for such payment is received before distribution of the proceeds is completed. The disposition of any Collateral, the realization of any proceeds, the application of any proceeds, or any one or more of the foregoing shall not operate to cure any nonmonetary or monetary default in or reinstate the Obligations for any purpose, or otherwise affect in any way Lender's rights and remedies with respect to any remaining Collateral, or any other real or personal property security, except to the extent otherwise required by law.

6.      **Miscellaneous Provisions**.

6.1. Governing Law and Venue.   THIS AGREEMENT IS EXECUTED AND DELIVERED IN CONNECTION WITH A LENDING TRANSACTION NEGOTIATED AND CONSUMMATED IN DALLAS COUNTY, TEXAS, AND SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF TEXAS. PLEDGOR, FOR ITSELF AND ITS SUCCESSORS AND ASSIGNS, HEREBY IRREVOCABLY (A) SUBMITS TO THE NONEXCLUSIVE JURISDICTION OF THE STATE AND FEDERAL COURTS IN TEXAS, (B) WAIVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION THAT IT MAY NOW OR IN THE FUTURE HAVE TO THE LAYING OF VENUE OF ANY LITIGATION ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS BROUGHT IN THE DISTRICT COURT OF DALLAS COUNTY, TEXAS, OR IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION, (C) WAIVES ANY OBJECTION PLEDGOR MAY NOW OR HEREAFTER HAVE AS TO THE VENUE OF ANY SUCH ACTION OR PROCEEDING BROUGHT IN SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM, AND (D) AGREES THAT ANY LEGAL PROCEEDING AGAINST ANY PARTY TO ANY OF THE LOAN DOCUMENTS ARISING OUT OF OR IN CONNECTION WITH ANY OF THE LOAN DOCUMENTS MAY BE BROUGHT IN ONE OF THE FOREGOING COURTS.

6.2. Entire Agreement; Modification.   This Agreement and the other Loan Documents collectively constitute the entire understanding between Lender and Pledgor as to the matters contemplated in those documents and may not be modified, amended, or terminated except by written agreement signed by both parties.

6.3. Partial Invalidity.   If any provision of this Agreement or the instruments or agreements reflecting the Obligations are held to be invalid, illegal, unenforceable, or voidable in any respect, no other provision of this Agreement, or of any such other instrument or agreement, will be affected thereby, and such other provisions will remain binding and enforceable.

6.4. Parties Benefited.   This Agreement applies to, inures to the benefit of, and binds all parties to this Agreement and their respective heirs, legatees, devisees, administrators, executors, successors, and assigns (but this provision will not be interpreted to permit or validate any lien, encumbrance, assignment, or other transfer by Pledgor that is prohibited by other provisions of this Agreement or other Loan Documents). "Lender" means the owner and holder, including pledgees, of any of the Obligations.

6.5. Headings.   Headings are used for convenience of reference only and do not define or limit the scope of this Agreement.

6.6. Written Notice; Delivery.

6.6.1. Any notice or demand required hereunder shall be deemed to be delivered when deposited in the United States mail, postage prepaid, certified mail, return receipt requested, addressed to Borrower or Lender, as the case may be, at the address set out hereinbelow, or at such other

7

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467873_3.docx

address as such party may hereafter deliver in accordance herewith. Any other method of delivery or demand shall be effective only when actually received by the recipient thereof. If and when included within the term "Pledgor" or "Lender" there are more than one person, all shall jointly arrange among themselves for their joint execution and delivery of a notice to the other specifying some person at some specific address for the receipt of all notices, demands, payments or other documents. All persons included within the terms "Pledgor" or "Lender," respectively, shall be bound by notices, demands, payments and documents given in accordance with the provisions of this paragraph to the same extent as if each had received such notice, demand, payment or document.

6.6.2. All notices will be addressed to the appropriate party at its address as follows or such other addresses as may be designated by notice given in compliance with this provision:

| | |
|---|---|
| Lender: | Caz Creek Lending Holdings, LLC<br>14800 Landmark Blvd., Suite 400<br>Dallas, Texas 75254<br>Attn: Ken Frisbie |
| Pledgor: | Endeavor Group Real Estate, LLC<br>620 13th Street<br>Manhattan Beach, California 90266<br>Attn: Richard Rubin |

6.7. Joint and Several Obligations. If more than one person has executed this Agreement as Pledgor, the obligations of all such persons will be joint and several. Any married person who executes this Agreement agrees that recourse may be had against his or her separate property and against community property. If Pledgor is a partnership, Pledgor's obligations will be the joint and several obligations of all general partners in that partnership.

**[SIGNATURES FOLLOW]**

8

**Ownership Interest Pledge Agreement**
\\CAPP-329\ProLaw$\Documents\4958.024\467873_3.docx

IN WITNESS WHEREOF, and intending to be legally bound, Pledgor has executed and delivered this Ownership Interest Pledge Agreement as of the date first written above.

**PLEDGOR:**

**ENDEAVOR GROUP REAL ESTATE, LLC,**
a Wyoming limited liability company

By: _____
    Richard Mark Rubin, Manager

By: _____
    Avi Patel, Manager

**CALMONT VILLA FW, LLC, A DELAWARE LIMITED LIABILITY COMPANY, ACKNOWLEDGES AND CONSENTS TO THIS OWNERSHIP INTEREST PLEDGE AGREEMENT.**

**CALMONT VILLA FW, LLC,**
a Delaware limited liability company

By: _____
    Richard Mark Rubin, Manager

By: _____
    Avi Patel, Manager

5/14/24

VARUN KAPUR
Notary ID #133912186
My Commission Expires
August 16, 2026

Ownership Interest Pledge Agreement
{Signature Page}

**ASSIGNMENT SEPARATE FROM CERTIFICATE**

For value received, and for the purpose of providing security for repayment of that certain Promissory Note of even date hereof, in the original principal amount of $6,510,187.56, executed by Calmont Villa FW, LLC, a Delaware limited liability company ("**Borrower**"), in favor of Caz Creek Lending Holdings, LLC, a Delaware limited liability company ("**Secured Party**"), the undersigned transfers and assigns to Secured Party all of his rights, title, stock and interest in and to Borrower. It is the intention of this assignment to confer possession of the membership interest and all certificates, if applicable, thereto to Secured Party for security purposes only.


Dated: May 17, 2024

**ENDEAVOR GROUP REAL ESTATE, LLC,**
a Wyoming limited liability company

By: _____
　　　Richard Mark Rubin, Manager

By: _____
　　　Avi Patel, Manager

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA　§
　　　　　　　　　　　§
COUNTY OF Los Angeles　§

On May 16 , 2024, before me, Michael Ohannesian , Notary Public, personally appeared Richard Mark Rubin, who proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (SEAL)
Notary Public Signature

> MICHAEL OHANNESIAN
> Notary Public - California
> Los Angeles County
> Commission # 2483466
> My Comm. Expires Mar 28, 2028

STATE OF TEXAS　§
　　　　　　　　§
COUNTY OF TRAVIS　§

　　　The foregoing instrument was ACKNOWLEDGED before me this 14th day of May, 2024, by Avi Patel, Manager of **ENDEAVOR GROUP REAL ESTATE, LLC**, a Wyoming limited liability company, on behalf of said limited liability company.

WITNESS my hand and official seal.



_____ (SEAL)

> VARUN KAPUR
> Notary ID #133912186
> My Commission Expires
> August 16, 2026

5/14/24

**Ownership Interest Pledge Agreement**
**Assignment Separate from Certificate**
**{signature page}**

**CALMONT VILLA FW, LLC, A DELAWARE LIMITED LIABILITY COMPANY, ACKNOWLEDGES AND CONSENTS TO THIS OWNERSHIP INTEREST PLEDGE AGREEMENT.**

**CALMONT VILLA FW, LLC,**
a Delaware limited liability company

By: _____
         Richard Mark Rubin, Manager

By: _____
         Avi Patel, Manager

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA      §

COUNTY OF **Los Angeles**      §

On May **16**, 2024, before me, **Michael Ohannesian**, Notary Public, personally appeared Richard Mark Rubin, who proved to me on the basis of satisfactory evidence, to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (SEAL)
Notary Public Signature

> **MICHAEL OHANNESIAN**
> Notary Public · California
> Los Angeles County
> Commission # 2483466
> My Comm. Expires Mar 28, 2028

STATE OF TEXAS      §

COUNTY OF **TRAVIS**      §

    The foregoing instrument was ACKNOWLEDGED before me this **14th** day of May, 2024, by Avi Patel, Manager of **CALMONT VILLA FW, LLC**, a Delaware limited liability company, on behalf of said limited liability company.

WITNESS my hand and official seal.



_____ (SEAL)
Notary Public Signature

> **VARUN KAPUR**
> Notary ID #133912186
> My Commission Expires
> August 16, 2026

Ownership Interest Pledge Agreement
Assignment Separate from Certificate
{signature page}